Alexandra Moss (SBN 302641)
alex@eff.org
Aaron Mackey (SBN 286647)
amackey@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Tel.:  (415) 436-9333
Fax.: (415) 436-9993

Attorneys for Intervenor
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FANCISCO DIVISION

| | |
|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A.,<br><br>                    Plaintiffs,<br><br>     v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case Nos.: 3:18-cv-00360 (WHA)<br>           3:18-cv-00358 (WHA)<br>           3:18-cv-00363 (WHA)<br>           3:18-cv-00365 (WHA)<br>           3:18-cv-00572 (WHA)<br><br>**NOTICE OF MOTION AND THIRD MOTION OF ELECTRONIC FRONTIER FOUNDATION TO INTERVENE FOR LIMITED PURPOSE OF OPPOSING MOTIONS TO SEAL**<br><br>Date:  December 17, 2020<br>Time:  8:00 AM<br>Courtroom 12, 19th Floor<br>Honorable William Alsup |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 17, 2020 at 8:00 AM in Courtroom 12, 19th Floor at the United States Courthouse at San Francisco, California, Intervenor, Electronic Frontier Foundation ("EFF"), will seek an order granting its combined motions to intervene and unseal judicial records.

Despite two years of litigation and two previous efforts to intervene and unseal judicial records that the public has a right to access, Uniloc continues to keep secret materials that the law requires be public. As explained below, EFF respectfully requests that the Court (1) grant immediate public access to the filings Uniloc proposes unsealing entirely, as shown on pages 2–8 of Exhibit A to the Declaration of Alexandra H. Moss filed herewith; (2) deny Uniloc's requests to seal the entire summary table attached to the Conformed Revenue Sharing and Note and Warrant Purchase Agreement (Dkt. 135-2); and (3) deny Uniloc's new requests to seal in connection with Apple's new motion to dismiss, as set forth in the Civil L.R. 79-5(e) Decl. of Aaron S. Jacobs in Supp. of Def. Apple Inc.'s Admin. Mot. to Seal, No. 3:18-cv-00358-WHA (N.D. Cal.) (Dkt. 173). This combined motion is based on this notice of motion, the memorandum of points and authorities in support of the motions, the declaration and exhibit filed herewith, all papers and records on file with the Clerk or which may be submitted prior to or at any time of the hearing, and any further evidence which may be offered.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

MEMORANDUM ....................................................................................................................1

I.    INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND.......................................................................................2

III.    ARGUMENT ................................................................................................................5

    A.    EFF Should Be Permitted to Intervene.............................................................5

    B.    The Federal Circuit Overwhelmingly Affirmed this Court's Ruling; Public Access Should Be Granted to Material of Uniloc and its Related Entities Immediately. ......................................................................................................5

    C.    Uniloc Has Failed to Justify Keeping an Entire Table of Third-Party License Information Secret............................................................................................6

        1.    Basic Patent Licensing Information is Not a Trade Secret. ......................6

        2.    Confidentiality Provisions Do Not Create Trade Secrets. ........................7

        3.    The Minimal Interests of Third-Party Licensees Do Not Justify Sealing..................8

        4.    The Public Has a Powerful Interest in Accessing these Court Records After Years of Unwarranted Secrecy..........................................................................9

    D.    Uniloc's Request to Seal Highly Relevant Information of Uniloc and Fortress in Connection with Apple's New Motion Should Be Denied in Full. ...............10

        1.    The Request to Seal the Entire Fortress Memorandum is Overbroad. ....11

        2.    Uniloc Failed to Show the Fortress Memorandum Is a Trade Secret......11

        3.    Assertions from Uniloc's Counsel Cannot Support Sealing Fortress's Information.............................................................................................12

        4.    The Public's Interest in Accessing Newly-Obtained, Relevant Evidence of Uniloc's Standing Outweighs Uniloc's Secrecy Claims. .........................13

IV.    CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Apple Inc. v. Psystar Corp.*,
    658 F.3d 1150 (9th Cir. 2011) ................................................................................................ 6

*Audionics Sys. Inc v. AAMP of Fla. Inc.*,
    No. CV 12-10763-MMM, 2013 WL 12129952 (C.D. Cal. Dec. 6, 2013) ............................ 11

*Blain v. Titanium Metals Corp.*,
    No. 218CV00462APGNJK, 2019 WL 1207929 (D. Nev. Mar. 14, 2019) ............................ 8

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
    F.3d 615 (Fed. Cir. 2016) .................................................................................................... 11

*F.T.C. v. Actavis, Inc.*,
    570 U.S. 136 (2013) .............................................................................................................. 8

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ........................................................................................ 7, 14

*Hodges v. Apple, Inc.*,
    No. 13–cv–01128–WHO, 2013 WL 6070408 (N.D. Cal. Nov. 18, 2013) ............................ 9

*Icon-IP Pty Ltd. v.* Specialized Bicycle Components, Inc.,
    No. 12-CV-03844-JST, 2015 WL 984121 (N.D. Cal. Mar. 4, 2015) .................................... 9

*Jean v. Nelson*,
    472 U.S. 846 (1985) ............................................................................................................ 12

Kamakana v. City & Cty. of Honolulu,
    447 F.3d 1172 (9th Cir. 2006) ............................................................................................. 14

*Lendlease (US) Constr., Inc. v. Zurich Am. Ins. Co.*,
    No. LACV2001249JAKJCX, 2020 WL 6128071 (C.D. Cal. May 22, 2020) ................ 9, 13

*Macias v. Cleaver*,
  No. 1:13-CV-01819-BAM, 2016 WL 3549257 (E.D. Cal. June 30, 2016) ................................ 14

*MMCA Grp. Ltd. v. Hewlett-Packard Co.*,
  No. C-06-7067 MMC, 2008 WL 5411340 (N.D. Cal. Dec. 29, 2008) ......................................... 7

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,
  129 F.R.D. 483 (D.N.J. 1990) ................................................................................................. 14

*Open Text S.A. v. Box, Inc.*,
  No. 13-CV-04910-JD, 2014 WL 7368594 (N.D. Cal. Dec. 26, 2014) ......................................... 9

*Tevra Brands LLC v. Bayer HealthCare LLC*,
  No. 19-CV-04312-BLF, 2020 WL 1245352 (N.D. Cal. Mar. 16, 2020) .................................... 13

*Uniloc 2017 LLC v. Apple, Inc.*,
  964 F.3d 1351 (Fed. Cir. 2020) ........................................................................................ *passim*

*Uniloc 2017 LLC v. Google LLC*,
  No. 4:20-cv-05344 (N.D. Cal.) (filed Oct. 2, 2020) ................................................................. 13

*Uniloc USA Inc. v. Motorola Mobility, LLC*,
  No. 1:17-cv-01658-CFC (D.Del.) (filed Jan. 2, 2019) .............................................................. 13

Union Oil Co. of California v. Leavell,
  220 F.3d 562 (7th Cir. 2000) ..................................................................................................... 7

*United States v. Line Material Co.*,
  333 U.S. 287 (1948) .................................................................................................................. 8

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  14-CV-04050-MEJ, 2017 WL 1881157 (N.D. Cal. May 9, 2017) ............................................. 7

**STATUTES**

U.S.T.A. § 1(4) ................................................................................................................................ 7

**OTHER AUTHORITIES**

Abby Rives, *Fortress Patent Fight Shows Abusive Litigation Hurts Startups*, Engine.
(Mar. 25, 2020) ................................................................................................................. 9, 10

**RULES**

Fed. R. Civ. P. 24(b) ................................................................................................................. 5

N.D. Cal. Civil L. R. 79-5 ............................................................................................... *passim*

# MEMORANDUM

## I. INTRODUCTION

For the third time, EFF files a motion to intervene and unseal judicial records in this case to (1) ensure compliance with the Federal Circuit's affirmance of this Court's earlier unsealing order and (2) unseal recently filed dispositive pleadings and related materials that, much like the earlier records, have no basis to remain under seal.

EFF should not have to file this motion. The parties have not followed the Federal Circuit's decision affirming this Court's previous unsealing order, much less implemented it by complying with this District's Local Rules moving forward, as the excessive sealing of Apple's renewed motion to dismiss shows. EFF's intervention is necessary to ensure the Federal Circuit's order takes effect and to vindicate the public's right of access.

Regarding enforcement of this Court's previous unsealing order affirmed by the Federal Circuit, Uniloc does not dispute that all previously sealed materials not involving third parties should be public. Yet four months after the Federal Circuit issued its affirmance, Uniloc has not re-filed unsealed versions of documents subject to this Court's unsealing order on the public docket, and portions of this Court's standing opinion are unnecessarily sealed as a result. As to the third-party licensees' materials, Uniloc has failed to provide any additional information or argument that could alter this Court's original conclusion that it has not shown compelling reasons to overcome the strong presumption of public access. EFF's intervention is therefore necessary again to effectuate the Federal Circuit's ruling.

Regarding Apple's new motion to dismiss, the sealed filings show that when presented with another chance to comply with the Local Rules, the Federal Circuit's command in this case, and controlling law on public access to judicial records, Uniloc again seeks to seal more than the law allows. This time, the information that is available to the public makes clear the sealed filings are highly relevant to a controlling legal issue: whether Uniloc has standing. According to Apple, this information was recently obtained in discovery, contradicts Uniloc's past arguments for standing, and establishes Uniloc's lack of standing on new grounds. Uniloc's standing (or lack thereof) is a dispositive legal question and, absent compelling reasons, the public is entitled to access the filings to understand the

legal issues and this Court's resolution of them. Uniloc has once more failed to justify keeping these materials under seal—it cannot keep this kind of information secret simply because it is harmful to its litigating position here or elsewhere.

More broadly, EFF seeks to intervene to highlight the problem of oversealing when parties are not motivated to uphold the public's rights to access judicial records. EFF should not have to litigate for over two years in multiple proceedings to obtain public access to court records that are strongly presumed to be open in the first place. Litigants are entitled to resolve private disputes in publicly-funded courts, but they are not entitled to do so secretly. To keep secrets in court proceedings, litigants must establish compelling reasons for privileging their private interests over the public's right of access. This District's Local Rules clearly impose these obligations on those who litigate here. They should be taken seriously from the outset.

If Uniloc had done so, intervention would not have been necessary. But by trying to seal as much as possible for as long as possible, Uniloc has repeatedly violated the public's right of access, necessitating repeated rounds of intervention. Once the public receives the access to which it is entitled, the need for intervention will end.

## II. FACTUAL BACKGROUND

On October 25, 2018, Apple moved to dismiss a set of four related Uniloc lawsuits: *Uniloc 2017 LLC v. Apple Inc.,* Case Nos. 3:18-cv-00360, -00363, -00365, and -00572-WHA (N.D.Cal.). Apple's motion and attached exhibits were so heavily sealed as to be unreadable: excessive redactions to the brief spanned whole pages, covering even legal citations, and attached exhibits were sealed in their entirety. Dkt. 135.[1]

EFF moved to intervene to challenge these improper sealing requests on January 9, 2019. Dkt. 152. This Court denied Uniloc's sealing requests in full on January 17, 2019. Dkt. 159. Uniloc filed a motion for reconsideration on February 15, 2019. Dkt. 168. EFF renewed its motion to intervene. Dkt. 177. On May 7, 2019, this Court denied Uniloc's motion for reconsideration and granted EFF leave to

---

[1] All docket numbers herein refer to the -00360 case unless otherwise indicated.

intervene on appeal if Uniloc challenged its decision. Dkt. 187. On May 21, 2019, Uniloc filed a notice of appeal to the Federal Circuit. Dkt. 189.[2]

EFF intervened as appellee to oppose Uniloc throughout the course of its appeal. On July 7, 2020, the Federal Circuit issued its decision. *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351 (Fed. Cir. 2020). The Federal Circuit concluded that this Court "'took seriously the presumption of public access and did so in accord with precedent from the Supreme Court and the Ninth Circuit,'" and therefore affirmed its "decision to deny Uniloc's requests to seal its purportedly confidential information and that of its related entities." *Id.* at 1363 (alteration and citation omitted). The Federal Circuit remanded Uniloc's requests to seal information of third-party licensees for "particularized determinations as to whether and, if so, to what extent, the materials of each of these [third] parties should be made public." *Id.* at 1364.

The Federal Circuit issued its mandate on August 17, 2020. Dkt. 215. That same day, Apple's counsel emailed Uniloc and EFF, asking Uniloc to (1) "identify all materials that Uniloc contends contain the confidential information of third parties" and (2) [i]f Uniloc/Fortress intend to argue that their interests are not closely aligned and that Fortress should instead be treated as a 'third party,' let us know as soon as possible so that the parties can meet and confer on a proposed schedule for discovery and briefing on that issue." Declaration of Alexandra H. Moss in Support of Third Motion of Electronic Frontier Foundation to Intervene ("Moss Decl.") ¶ 2.

On August 19, Uniloc's counsel replied: "We're looking over this and will get back to you." *Id.* On August 26, Apple's counsel emailed again. *Id.* Uniloc responded obliquely, saying that it "intends to abide by its contractual obligation to keep all Uniloc/third-party information sealed." *Id.* On August 28, Apple's counsel emailed again, explaining that "the response does not fully answer the questions," and asking "for a response by September 4 to the two questions posed in my email of August 17." *Id.*

On September 3, Uniloc responded. *Id.* Counsel stated that "Uniloc and Fortress reviewed the information that remains sealed in the documents that relate to them and decided that, at this point, it

---

[2] The facts leading up to Uniloc's appeal are set forth in greater detail in the Federal Circuit's decision, *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1354–57 (Fed. Cir. 2020), this Court's prior rulings, Dkt. 159 at 1–2 & Dkt. 187 at 2–3, and EFF's first two intervention motions, Dkt. 152 at 1–3 & Dkt. 177 at 1–2.

makes the most sense to unseal everything that relates solely to them," but that "[a]ll third-party information that is sealed should remain under seal." *Id.* That email also included what Uniloc's counsel believed to be "a complete list of the documents that were filed under seal or redacted, and Uniloc's proposal" for unsealing or redacting each document. *Id.* That list is shown on pages 2 through 8 of Exhibit A to the Moss Declaration.

Uniloc's list proposes unsealing the majority of the disputed sealed filings in their entirety, and redacting discrete financial information in two documents (the Microsoft Agreement and Apple's reply*)*. But it also proposes sealing an entire table of basic licensing information, including the names of Uniloc's licenses and dates of their licenses as well as amounts paid, in the Conformed Revenue Sharing and Note and Warrant Purchase Agreement (Dkt. 135-2). *See* Moss Decl., Ex A at 2–8. Most of the licensees named on that list have voiced no objection to the disclosure of this information, and some have explicitly approved. Dkt. 168-2 ¶¶ 5–7 (Jacobs Decl. in Supp. of Mot. for Reconsideration).

On September 23, Apple's responded, asking Uniloc to confirm that its sealing proposals would permit the Court's standing order to be unsealed in full, and to "prepare a filing that reflects this proposal so that the appropriate material can be unsealed." Moss Decl. ¶ 2. On September 30, Uniloc replied: "Yes, we plan to completely unseal the order. We are working on the paperwork for two separate administrative motions, which we hope to get to you by the end of this week." *Id.* There have been no further communications or filings in this case as Uniloc's counsel described on September 23.

On October 22, Apple filed a new motion to dismiss in a related case: *Uniloc 2017 LLC v. Apple, Inc.*, No. 3:18-cv-00358-WHA (N.D. Cal.) ("-00358 case"). In this new motion to dismiss, Apple again argued that Uniloc lacked standing when it filed the lawsuit because it had defaulted on a loan from Fortress. *See* Def. Apple Inc.'s Mot. to Dismiss for Lack of Subject-Matter Jurisdiction, No. 3:18-cv-00358-WHA (N.D. Cal.) at 1–2 (Dkt. 165). Again, Apple's motion was heavily redacted and entire exhibits were filed under seal pursuant to Uniloc's confidentiality designations. *See id.* at 9 (redacting practically an entire page of Apple's motion); Def. Apple Inc.'s Admin. Mot. to Seal Portions of its Mot. to Dismiss, No. 3:18-cv-00358-WHA (N.D. Cal.) at 1 (Dkt. 164) (sealing exhibits A, B, I, and K).

On October 30, Uniloc filed a declaration from its attorney to support sealing some, but not all of the material filed under seal with Apple's new motion to dismiss. *See* Civil L.R. 79-5(e) Decl. of Aaron

4

S. Jacobs in Supp. of Def. Apple Inc.'s Admin. Mot. to Seal, No. 3:18-cv-00358-WHA (N.D. Cal.) ¶¶ 2, 8, 9, 18, 19, 23 (Dkt. 173) ("New Jacobs Decl."). Uniloc's counsel provided assertions in the declaration to support sealing (1) portions of deposition testimony (Exhibit A) referencing the names of several Uniloc licensees, *id.* ¶ 9; (2) one exhibit—the Fortress Investment Memorandum (Exhibit I)—entirely, *id.* ¶ 19, and (3) portions of Apple's brief discussing that Memorandum, *id.* ¶ 23.

### III. ARGUMENT

#### A. EFF Should Be Permitted to Intervene

EFF should be permitted to intervene for all the reasons it has described twice before.[3] This Court granted EFF leave to intervene for the purpose of opposing Uniloc in its appeal of this Court's prior sealing decision. Dkt. 159 at 2 and Dkt. 176 at 4. EFF did so. *Uniloc*, 964 F.3d at 1351. As before, EFF has standing to assert the public's right of access, and is an appropriate intervenor under Rule 24(b).

After the Federal Circuit ruled, EFF hoped the parties would voluntarily re-file unsealed versions of the Uniloc entities' documents and initiate remand proceedings on the third-party materials. And given the discussions between the parties as described above, it appeared as though Uniloc would do so. But months have passed since the Federal Circuit's mandate, and the public's access continues to be frustrated. It does not appear that Uniloc will comply with court orders denying its sealing requests voluntarily, or that Apple will challenge Uniloc's failure to do so on behalf of the public's right of access.

EFF's intervention is therefore necessary to ensure the orders of this Court and the Federal Circuit are enforced so that the public can at last receive the access to which it is entitled.

#### B. The Federal Circuit Overwhelmingly Affirmed this Court's Ruling; Public Access Should Be Granted to Material of Uniloc and its Related Entities Immediately.

The Federal Circuit affirmed this Court's "decision to deny Uniloc's requests to seal its purportedly confidential information and that of its related entities." *Uniloc*, 964 F.3d at 1363. And

---

[3] *See* Dkt. 152 at 4–5 (EFF Motion to Intervene) and Dkt. 188 at 3 (Renewed EFF Motion to Intervene). Because this Court acknowledged EFF's standing and the propriety of its intervention by granting it leave to oppose Uniloc on appeal, EFF does not repeat its arguments for standing and permissive intervention here.

Uniloc has admitted that most of the disputed filings can and should be unsealed, including this Court's earlier order. Moss Decl. ¶ 2 & Ex. A at 1–8. Uniloc's counsel explicitly confirmed that all court records exclusively containing Uniloc and Fortress material could be unsealed. *Id.* Uniloc has had ample time to prepare and re-file documents reflecting these proposals. There is no reason to withhold access to any of the filings identified as "unsealed" on Uniloc's proposed list.

But the public is still not able to access these materials. Uniloc has not filed unsealed versions of any documents containing Uniloc and its related entities' information, even though its requests to seal that information have been denied. Even the Court's standing opinion is still redacted unnecessarily. The Court can remedy this ongoing frustration of the public's access rights immediately.

### C.  Uniloc Has Failed to Justify Keeping an Entire Table of Third-Party License Information Secret.

Uniloc has failed to provide any new information or argument to alter this Court's previous rejection of its effort to keep third-party licensee information entirely under seal. The Federal Circuit remanded for this Court to "make particularized determinations as to whether and, if so, to what extent, the materials of each of these parties should be made public." *Uniloc*, 964 F.3d at 1364. In particular, it noted the record lacked an assessment of "whether any of the third-party information was 'protectable as a trade secret or otherwise entitled to protection under the law.'" *Id.* (quoting N.D. Cal. Civ. Local R. 79-5(f)(2)) (citing *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011)).

This Court previously concluded that Uniloc has "not sufficiently shown that the information at issue constitutes trade secrets." Dkt. 176 at 3. As discussed further below, that conclusion was correct. Uniloc has not and cannot show that these basic facts about patent licenses are sealable trade secrets under Local Rule 79-5.

#### 1.  *Basic Patent Licensing Information is Not a Trade Secret.*

Uniloc is asking to seal an entire table of historical licensing information based on its argument that this type of information is a trade secret. *See* Dkt. 168-1 at 8–10 (Pls. Mot. for Reconsideration). That argument is wrong: basic facts like a licensee's name or a license's duration are not trade secrets.

The Uniform Trade Secret Act defines a "trade secret" as:

information, including a formula, pattern, compilation, program, device, method, technique, or process that . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

U.S.T.A. § 1(4). Secrecy without more does not make a trade secret. Beyond that, the information must "derive[] independent economic value, actual or potential from not being generally known to . . . other persons who can obtain economic value from its disclosure or use." *Id.*

The basic information in the summary table—licensee names, license dates, and license rates—does not have independent economic value. Neither Uniloc nor any of its licensees have offered anything to suggest otherwise. Those licensees who submitted unsealed declarations did not state that their names, the dates of their licenses, or the amounts paid would have independent economic value.[4] Nor did they explain how this kind of information could be used to obtain economic value.

### 2. *Confidentiality Provisions Do Not Create Trade Secrets.*

Confidentiality provisions do not turn the terms of an agreement into trade secrets. The Local Rules state clearly that such provisions are insufficient without more justify sealing: "A stipulation, or a blanket protective order that allows a party to designate documents as sealable, will not suffice to allow the filing of documents under seal." Civ. L.R. 79-5(d)(1)(a). So does Ninth Circuit precedent.[5] *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003) ("Because [the litigant] obtained the blanket protective order without making a particularized showing of good cause with respect to any individual document, it could not reasonably rely on the order to hold these records under seal forever.").

Accordingly, district courts do not seal documents on the basis of confidentiality provisions or designations during discovery. *See, e.g.*, *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 14-CV-04050-MEJ, 2017 WL 1881157, at *2 (N.D. Cal. May 9, 2017). ("That the Settlement Agreement 'by its own terms' is designated confidential does not relieve [litigants] of their burden to show compelling reasons to seal the document."); *MMCA Grp. Ltd. v. Hewlett-Packard Co.,* No. C-06-7067

---

[4] Because some licensees submitted sealed or heavily-redacted declarations, EFF cannot address their contents. We hope the Court will scrutinize these secret submissions carefully for evidence that this kind of basic licensing information has independent economic value that could qualify it as a trade secret.

[5] As do other regional circuits. *See, e.g.*, *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) ("[c]alling a settlement confidential does not make it a trade secret").

MMC, 2008 WL 5411340, at *1 (N.D. Cal. Dec. 29, 2008) ("[S]tatement that said documents have been designated 'confidential' or 'highly confidential-attorneys' eyes only' pursuant to the parties' stipulated protective order . . . is insufficient to establish the documents are sealable.") (citing Civ. L.R. 79-5(a)); *see also Blain v. Titanium Metals Corp.*, No. 218CV00462APGNJK, 2019 WL 1207929, at *2 (D. Nev. Mar. 14, 2019) ("[C]onclusory statements that the parties relied on confidentiality when forming the settlement agreement do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents.") (internal quotation marks and citation omitted).

The same rules apply to Uniloc: it cannot rely on confidentiality provisions to keep these records under seal forever.

### 3. *The Minimal Interests of Third-Party Licensees Do Not Justify Sealing.*

Despite Uniloc's contentions, the record shows that the third-party licensees' minimal interest in sealing all information about their licenses is overcome by the public's compelling interest in access.

When Uniloc contacted the 109 licensees identified on the table, most did not even bother to respond. Dkt. 168-2 ¶¶ 5–7. That silence, by itself, significantly undercuts Uniloc's secrecy claims. Of approximately forty licensees who responded, two "indicated that they agreed to disclose the information as to their licenses." *Id.* ¶ 7. Some responded, but only viewed the amounts paid as confidential, not their identities or the dates of their licenses. *See id.* ¶ 8.

Others objected to disclosing any information about their licenses because "they view all the information disclosed about them in the Uniloc document as confidential, financial and business information, the disclosure of which would cause them competitive harm." *Id.* ¶ 9. For example, the Chief Intellectual Property Officer and General Counsel of Cerner Corporation stated that, if the amount of its settlement with Uniloc were disclosed, "other patentees may leverage that information to their benefit . . . in negotiating future licensing deals or patent settlements." *Id.* ¶ 8(c).

Neither Uniloc nor its licensees explain how other patentees might leverage information about amounts paid to license *Uniloc's* patents. Because a patent grants its owner exclusive rights, Uniloc alone can offer licenses to use its patents. *See F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 147 (2013) ("[A] valid patent excludes all except its owner from the use of the protected process or product.") (quoting *United States v. Line Material Co.,* 333 U.S. 287, 308 (1948)). Uniloc has no competitors; its licensees

have no other suppliers. Any negotiations third-party licensees have with patentees other than Uniloc will necessarily involve different patents, and the amounts those patentees offer will be based on the economic value of their own patents. Uniloc does not explain how other patentees could exploit information about its patent licenses to obtain additional economic value in negotiations for their own.

These unsupported assertions of competitive harm are not sufficient to justify sealing. *See Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2014 WL 7368594, at *2 (N.D. Cal. Dec. 26, 2014) ("An unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient.") (quoting *Hodges v. Apple, Inc.,* No. 13–cv–01128–WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013)). For example, in *Lendlease (US) Constr., Inc. v. Zurich Am. Ins. Co.*, No. LACV2001249JAKJCX, 2020 WL 6128071 (C.D. Cal. May 22, 2020), the court refused to seal terms of an insurance policy (such as a "liability limits, self-insured retention and similar information") where the proponent of sealing provided only an "'unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage.'" *Id.* at *2 (quoting *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2015 WL 984121 at *2 (N.D. Cal. Mar. 4, 2015 (quoting *Hodges*, 2013 WL 6070408, at *2)).

Given the number of licensees who voiced no objection to disclosure, the unsupported assertions of those who objected should carry little weight. At the very least, Uniloc should not be able to seal information about those licensees who implicitly or explicitly consented to disclosure. Uniloc's desire for secrecy should not trump their respect for the public's access rights.

### 4. *The Public Has a Powerful Interest in Accessing these Court Records After Years of Unwarranted Secrecy.*

As EFF has argued, the public has a powerful interest in learning facts relevant to Uniloc's ownership of the patents-in-suit and thus its right to assert those patents against individuals and companies beyond the parties to this case. Dkt. 152 at 8; Dkt. 177 at 6.

Members of the press and public closely watch Uniloc's patent assertion activities because it "is one of the most active [patent assertion entities] in the country." Abby Rives, *Fortress Patent Fight Shows Abusive Litigation Hurts Startups*, Engine, https://www.engine.is/news/fortress-patent-fight-

9

shows-abusive-litigation-hurts-startups (Mar. 25, 2020). Notably, Fortress, "a firm with over $40 billion in assets under management," has since 2014 "exercised increasing control and ownership of Uniloc's patent assets." *Id.* And "because Fortress and Uniloc own or control so many patents and have the funding to bankroll so many assertions," their litigation threats force small companies "to either face the cost and risk of repeated litigation (which many simply cannot afford) or pay to license invalid patents they do not infringe." *Id.*

As this Court is aware, "patent holders tend to demand in litigation a vastly bloated figure in 'reasonabl[e] royalties' compared to what they have earned in actual licenses of the same or comparable patents." Dkt. 176 at 2. But these inflated royalty demands are often made public only after discovery and dispositive briefing, a prospect that small companies threatened with patent infringement simply cannot afford. The only way the public or entities targeted in patent litigation can push back against the tactic of claiming unreasonable royalties is by gaining access to evidence of a patent's economic value, including amounts paid for licenses, once a lawsuit is filed with a court. This is particularly true when the licensing issues are bound up with a potentially dispositive motion such as this. Because patent assertion entities like Uniloc typically settle long before cases proceed to trial, it is critical that this information be made available to the public once it becomes a court record. Otherwise, these entities will be able to continue demanding the most bloated payments from those who are least able to afford the discovery necessary to bring them down to size.

The public's interest is even greater now that EFF has spent two years striving for access that remains elusive. The fact that Uniloc has so persistently fought to keep these records secret only confirms the public's interest is well-founded. There is no reason to withhold access any longer.

### D. Uniloc's Request to Seal Highly Relevant Information of Uniloc and Fortress in Connection with Apple's New Motion Should Be Denied in Full.

EFF also seeks leave to intervene to vindicate the public's right of access to materials subject to a new round of improper sealing requests by Uniloc in connection with Apple's new motion to dismiss. These requests seek to seal (1) an entire exhibit, the Fortress Investment Memorandum, (2) references to that memorandum it in Apple's brief, and (3) references to the names of several of Uniloc's licensees in

deposition testimony. *See* New Jacobs Decl. ¶¶ 2, 8, 9, 18, 19, 23 (-00358 Case, Dkt. 173). Those requests should be denied in full.

### 1. *The Request to Seal the Entire Fortress Memorandum is Overbroad.*

As EFF has previously argued, requests to seal agreements in their entirety frequently and rightly fail. *See* Dkt. 177 at 5 (citing *Audionics Sys. Inc v. AAMP of Fla. Inc.*, No. CV 12-10763-MMM, 2013 WL 12129952 at *3 (C.D. Cal. Dec. 6, 2013) (rejecting request to entirely seal license); *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 n.1 (Fed. Cir. 2016) (at court's request, party counsel waived claim that an entire agreement was confidential). Indeed, Uniloc's earlier requests for blanket secrecy failed in this Court. *See* Dkt. 158 at 1.

Uniloc's request to seal the entire Fortress Investment Memorandum should fail for the same reasons. Asking to seal the entire document, instead of redacting specific contents, is unquestionably overbroad. Under the Local Rules, that is reason enough to deny Uniloc's new requests in full. *See* L.R. 79-5; *Uniloc*, 964 F.3d at 1363.

### 2. *Uniloc Failed to Show the Fortress Memorandum Is a Trade Secret.*

In this District, "[a] sealing order may issue only upon a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civil L.R. 79-5 (b). Uniloc has failed to show any of the information it is trying to seal in connection with Apple's new motion qualifies as a protectable trade secret.

According to Uniloc's counsel: "Fortress asks that the memorandum be filed entirely under seal," because "[t]he document is considered a trade secret and has been maintained as such." New Jacobs Decl. ¶ 19 (-00358 Case, Dkt. 173). Uniloc's counsel asserts that the memorandum "summarizes Fortress's prior interactions and business dealings with Uniloc; analyzes Uniloc in depth; and proposes additional investments in Uniloc, based upon Fortress's internal, proprietary analyses of Uniloc." *Id.* ¶ 20. It also "includes a table containing information regarding approximately sixty of Uniloc's third-party licensees, including the names, dates and amounts paid for those licenses," which counsel contends "is among the most confidential information about Uniloc and those third-parties." *Id.* ¶ 21.

These assertions are insufficient to justify sealing the entire memorandum as a trade secret. As discussed above, a trade secret must derive independent economic value from not being generally

11

known to those who could use it to obtain economic value. *See supra*, at 6–6. The brief summary of the memorandum's contents does not identify anything in particular that could be a trade secret. Uniloc's counsel also points to "a number of particular terms which are not publicly available, and which are considered proprietary to Fortress," New Jacobs Decl. ¶ 20, but does not explain what those terms are, what they relate to, or how others might use them to obtain economic value. While Uniloc's counsel emphasizes that "*Fortress* considers its investment criteria among the most valuable—and thus confidential—information available to *it*," *id.* ¶ 20 (emphases added), there is no indication this information has any independent economic value that anyone else could harness.

Uniloc does not allege that others would use this information improperly, for example, to offer prices below what would be profitable for Uniloc or Fortress. Instead, counsel asserts: "Disclos[ur]e of the information contained in the Fortress Investment Memorandum would not only harm Fortress's ability to negotiate and deal further with Uniloc . . . but also other third-parties with whom Fortress might seek to deal." *Id.* ¶ 20; *see also id.* ¶ 21 (disclosure of summary license table "would also cause the third-parties listed on that table significant, unavoidable and potentially insurmountable information disparity between them and future licensors"). These unsupported assertions of unidentified harm are insufficient to establish trade secrets or support sealing court records in this District. *See supra*, at 6–6. They are also the same type of "perfunctory assertions" the Federal Circuit and this Court agreed were "insufficient" to support Uniloc's previous sealing requests. *Uniloc*, 964 F.3d at 1359.

### 3.     *Assertions from Uniloc's Counsel Cannot Support Sealing Fortress's Information.*

All Uniloc has provided to support sealing the Fortress Investment Memorandum are assertions from Uniloc's counsel. It is not clear how Uniloc's counsel could be competent to discuss that document given that "no one at Uniloc— or anyone else not associated with Fortress—has seen the Fortress Investment Memorandum." New Jacobs Decl. ¶ 19. Presumably, Uniloc's counsel could have obtained this information from someone at Fortress, but his declaration does not say. These contradictory and unsupported assertions of counsel can be disregarded. *See Jean v. Nelson*, 472 U.S. 846, 866 (1985) ("The Solicitor General's contention to the contrary is merely an unsupported assertion by counsel for a litigant; this Court owes it no deference at all.").

### 4. *The Public's Interest in Accessing Newly-Obtained, Relevant Evidence of Uniloc's Standing Outweighs Uniloc's Secrecy Claims.*

The public's interest in seeing these court records is paramount. According to Apple, the evidence Uniloc is trying to seal was recently obtained in discovery that focused on Uniloc's ability to cure its default to Fortress, and thus prevent a loss of standing. Although Apple's motion redacts all details about *what* this new evidence says, Apple clearly believes it is highly relevant and sufficiently compelling to change the Court's earlier conclusion on Uniloc's standing. If the Court changes its conclusion and decides Uniloc lacked standing when it sued Apple, this whole suit would fall. Where, as here, "the material to be sealed goes to the very heart of the suit, the public interest in access is especially great." *Lendlease (US) Constr., Inc. v. Zurich Am. Ins. Co.*, No. LACV2001249JAKJCX, 2020 WL 6128071, at *2 (C.D. Cal. May 22, 2020) (quoting *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV-04312-BLF, 2020 WL 1245352, at *2 (N.D. Cal. Mar. 16, 2020)).

As discussed above, *see supra* at 9–9, the public has a powerful interest in seeing evidence relevant to Uniloc's relationship with Fortress because of the impact their relationship has on patent litigation and assertion activities across the country. The public's interest in Apple's new evidence is especially great because of its relevance to other pending and future Uniloc cases. Whether Uniloc has standing to sue is a legal question that does not vary by defendant or district, and could be fatal to any suit Uniloc brings.

Apple is not the only defendant to file a motion to dismiss for lack of standing due to Uniloc's relationship with Fortress. *See, e.g.*, Def. Google LLC's Renewed Mot. to Dismiss for Lack of Standing, *Uniloc 2017 LLC v. Google LLC*, No. 4:20-cv-05344 (N.D. Cal.), Dkt. 202-1 (filed Oct. 2, 2020) and Motorola Mobility, LLC's Opening Br. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction, *Uniloc USA Inc. v. Motorola Mobility, LLC,* No. 1:17-cv-01658-CFC (D.Del.), Dkt. 60 (filed Jan. 2, 2019). But because so many of the records in these cases are heavily redacted or entirely sealed, it is impossible for the public to know if Uniloc is even taking consistent positions on the same issue in different courts. That will only change if this Court compels Uniloc to comply with this District's sealing rules.

The public has the right and need to see evidence that is highly relevant to Uniloc's standing, and it is of no moment whether those records would complicate Uniloc's litigating position in other matters.

"The Ninth Circuit has explicitly stated that 'exposure to further litigation' is not a compelling reason to overcome the presumption of public access to court records." *Macias v. Cleaver*, No. 1:13-CV-01819-BAM, 2016 WL 3549257, at *4 (E.D. Cal. June 30, 2016) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)); *see also Foltz*, 331 F.3d 1122 at 1137 (even if "disclosure might harm State Farm by exposing it to additional liability and litigation, . . . a litigant is not entitled to the court's protection from this type of harm") (citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 129 F.R.D. 483, 486 (D.N.J. 1990)).

Uniloc's requests to seal are ultimately a request for this Court to engage in damage control. That request should be denied in full.

## IV. CONCLUSION

For the foregoing reasons, EFF respectfully requests that the Court (1) grant immediate public access to the filings Uniloc proposes unsealing entirely, as shown in Exhibit A at 1–8; (2) deny Uniloc's requests to seal the entire summary table the Conformed Revenue Sharing and Note and Warrant Purchase Agreement (Dkt. 135-2); and (3) deny Uniloc's new requests to seal in connection with Apple's new motion to dismiss in the -00358 case, as set forth in the New Jacobs Decl. (Dkt. 173).

Dated: November 12, 2020

Respectfully submitted,

By: */s/ Alexandra H. Moss*
Alexandra H. Moss
Aaron Mackey
Attorneys for Intervenor
ELECTRONIC FRONTIER FOUNDATION